### LAING v. PELTON WATER WHEEL CO.

(Supreme Court, Appellate Division, First Department. December 13, 1907.)

1. SALES—ACCEPTANCE—INSPECTION—WAIVER.

    A manufacturer sold goods to a buyer, who resold to a third person for use in a foreign country. On the delivery of the goods an employé of the buyer inspected them and reported that they were defective. An agent of the manufacturer stated that the goods were all right and requested that they be shipped to the foreign country. After they reached the foreign country the third person rejected them, and the manufacturer wrote to the buyer that the goods would be made satisfactory and guaranteed such results. *Held*, that the manufacturer waived acceptance on delivery, and postponed inspection until the arrival of the goods in the foreign country, and was estopped from claiming that his implied warranty as manufacturer did not survive delivery.

2. SAME—BREACH OF IMPLIED WARRANTY—TENDER OF GOODS—ESTOPPEL.

    A seller, who waived acceptance on delivery to the buyer, reselling to a third person for use in a foreign country, and who postponed inspection until arrival of the goods in the foreign country, and who required an actual installation of the goods in the foreign country before admitting that a proper inspection was possible, was estopped from insisting on a tender back of the goods, on the buyer demanding damages for breach of implied warranty.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1227.]

Appeal from Judgment on Report of Referee.

Action by William T. Laing against the Pelton Water Wheel Company. From a judgment for plaintiff, entered on the report of a referee to hear and determine, defendant appeals. Modified and affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Strauss & Anderson (Frederick E. Anderson, of counsel), for appellant.

Simpson, Werner & Cardozo (Benjamin N. Cardozo, of counsel), for respondent.

CLARKE, J.  This is an action on an assigned claim by the Carroll-Porter Boiler & Tank Company to the plaintiff to recover a balance of $9,369.28, with interest, on a contract for the manufacture and sale of merchandise consisting of riveted steel pipes made and delivered by the plaintiff's assignor to the defendant between the 3d day of June, 1898, and the 28th day of August, 1900.  The defense is the breach of an implied warranty that the pipe in question, being a manufactured article, should be merchantable and reasonably adapted to the use for which it was intended, to wit, the carrying of water under high pressure for the purpose of furnishing power for what are known as hydro-electric installations in the republic of Mexico.  The defendant in its answer admits the sale of the merchandise in question, but sets up, as and by way of offset or counterclaim, that the defendant was compelled to lay out and expend large sums of money on the alteration and repair of the pipe and its accessories in order to make the same, as far as possible, answer the purpose for which it was intended, and in replacing large portions thereof with new pipe where the pipe was so imperfect as to make it impossible to make the same water-tight; that the said defendant was thereby greatly hindered and delayed in the carrying out of contracts for the purpose of which said pipe and accessories had been ordered, all to the damage of the defendant in the sum of $11,500, which said sum the defendant offsets and counterclaims against the alleged cause of action in the complaint set forth.

There were two kinds of pipe contracted for—a flanged pipe for the bulk of the installments, and a slip-joint pipe for an installation known as the "San Miguel."  So far as the flanged pipe is concerned we are satisfied with the conclusion of the learned referee.  A different question is presented in regard to the slip-joint pipe.  The contract provides that the pipe should be delivered f. o. b. in New York, and the directions were to deliver on lighters alongside the ship.  The defendants testified that they sold the pipe to a certain Mexican concern, and delivery to it was made by the transfer of the bill of lading, so that delivery to the defendants and delivery by them to their vendee was a simultaneous act.  Mr. Doswell, an employé of the defendant, sent by them from time to time to inspect the pipe, examined the pipe for the San Miguel line on the lighter alongside the Southern Pacific steamship dock.  He observed that the slip joints were not made in a proper manner, that the plates were not sheared parallel with the rivets, that too much lap was left on them, and his impression was that, with the way the slip joints were made, it would not be possible to make a tight joint of the pipe.  He reported the condition of the pipe to Mr. Kunze, the manager of the defendant, and subsequently made a second inspection with Mr. Ticer, the sales agent of the plaintiff's assignors.  Mr. Kunze testified that, when Ticer returned after looking at the pipe with Doswell:

"He said that Doswell had greatly exaggerated the situation; that the pipe, while it was a rough job, was all right; to go ahead and ship it.  He said he was confident we would have no trouble.  *  *  *  I said: 'Very well; we will do so, but if there is any trouble you will have to make good.'  He said

there would be no trouble.  The pipe was all right.  He requested me to go ahead and ship the pipe."

Ticer testified that he received a letter from Kunze, written on September 13, 1899, giving him Doswell's report on the pipe, and thereafter examined it himself.  Ticer wrote to plaintiff's assignors September 16, 1899, in regard to this pipe:

"This pipe is not a good job by any means.  *  *  *  I must say that your interests will suffer greatly if you are not here Monday morning to examine this pipe before shipment.  I feel sure that many claims will result, and that Pelton will not pay you in full for this job until they have gotten settlement out of their customer."

He wrote again on September 18th:

"I have already told you the condition that I found the pipe in on personal examination of it, and I have found nothing more to add.  I have arranged with Pelton to ship it forward, and when it reaches destination Mr. Kunze will be down there himself, and if the work is not right will notify you, and you must make it so, or he will be obliged to do it at your expense.  *  *  *  Now that is all that there is in Mr. Kunze's contention in the matter, and he would be glad to have the pipe go through without any trouble; but if it does not, and defective workmanship is clearly demonstrated, what can he do but to look to you to make it right?  Such will undoubtedly be his course of action in the matter."

It seems to me that, taking all of this testimony together, there was a waiver of acceptance upon delivery, and that the time for inspection was postponed until the pipe should arrive in Mexico.  After it reached Mexico there were renewed complaints of the condition of this pipe.  On December 4, 1899, Ticer telegraphed:  "Customer rejected 1474"—the San Miguel job.  On December 5, 1899, plaintiff's assignor wrote:

"If the pipe is not yet in position, they have no way of telling what the leaks will amount to.  *  *  *  For a man to go on the ground as their superintendent has and condemn work without trying it is not very great proof of his supposed experience."

Thereafter Mr. Porter, of Carroll-Porter Company, plaintiff's assignor, went personally to Mexico with an employé and worked for some time installing this line.  While he was there plaintiff's assignors wrote to defendant January 5, 1900:

"There is no question in our mind but that this pipe will be made perfectly satisfactory, and we can guarantee such results.  Such being the case, coupled with the fact that we are making shipments on your other contracts right along, we would ask that you as early as possible send us, if not settlement for old accounts, an amount which would be equivalent."

The line never did hold water.  New material had to be bought and substituted to some extent; and the defendants, in making the line good, expended various sums of money.  The referee has found that the difference between the value of the San Miguel line as it was and as it would have been if said defects had not existed was $1,121.02.  It seems to me, taking all the facts together, that the plaintiff's assignors waived acceptance upon delivery in New York, and postponed inspection, and insisted upon actual installation of the line, and that under these circumstances they are estopped from

claiming that the implied warranty of a manufacturer did not survive delivery in this port upon the lighter, and are likewise estopped from insisting upon a tender back of the pipe line, which they required should be actually installed in Mexico before they would admit that proper inspection was possible.

Under the facts as here developed, the judgment should be modified, by reducing the amount thereof by $1,121.02, the sum found by the referee, and, as so modified, affirmed, without costs to either party. All concur.